IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HAROLD D. LATIN                                                                                    PLAINTIFF

v.                                            Civil No. 4:19-cv-04003

SHERIFF DANNY MARTIN, Nevada County,
Arkansas; JAILER ASHLEY TURNER; JAILER TOMMI;
LIEUTENANT KAREN GHOMBLEY; SERGEANT
KRISTEN EVAN; and ROBERT MISSY                                             DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed *pro se* by Plaintiff, Harold D. Latin, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 30). After careful consideration, I make the following Report and Recommendation.

**I.      BACKGROUND**

Plaintiff, currently an inmate in the Arkansas Department of Correction ("ADC") – Ouachita River Unit, filed his Complaint on January 14, 2019, alleging he was subjected to unconstitutional conditions of confinement and denied medical care during his incarceration in the Nevada County Jail ("NCJ") in 2018. (ECF No. 1). On January 23, 2019, the Court ordered Plaintiff to file an Amended Complaint. (ECF No. 5). Plaintiff did not respond to the Court's order and on March 4, 2019, the case was dismissed without prejudice. (ECF No. 7).

On March 18, 2019, Plaintiff filed a Motion to Reopen the case. (ECF No. 8). The following day the Court granted the motion and ordered Plaintiff to file an Amended Complaint. (ECF No. 10). On April 17, 2019, Plaintiff filed a First Amended Complaint once again alleging

1

he was subjected to unlawful conditions of confinement and denied medical care at the NCJ in 2018. (ECF No. 13).  Plaintiff is suing Defendants Sheriff Danny Martin, Jailer Ashley Turner, Jailer Tommi,[1] Lieutenant Karen Ghombley, Sergeant Kristen Evan, and Robert Missy in both their official and individual capacities.  Plaintiff is seeking compensatory and punitive damages "to take care of my back problems".  (ECF No. 13 p. 9).  He also asks for injunctive relief to "…fix leak so some else don't get hurt…." *Id.*

Defendants filed a summary judgment motion on December 6, 2019, arguing they are entitled to judgment as a matter of law because: 1) Plaintiff was not subjected to unconstitutional conditions of confinement; 2) Defendants were not deliberately indifferent to Plaintiff's medical needs; 3) Defendants are entitled to qualified immunity; and 4) there is no basis for official capacity liability.  (ECF No. 30).  On January 13, 2019, Plaintiff filed a Response.  (ECF Nos. 35, 36).  Plaintiff's specific claims are as follows.

In November of 2018, Plaintiff was detained in the NCJ on charges of assault and possession of a firearm by certain persons.  (ECF No. 36 p. 1).  He was housed in Pod-1 Cell number 3 "which is right by the shower and there was a leak between the wall and my cell". *Id.* According to Plaintiff, water was on the floor on the morning of November 16, 2018, and he "stepped in the water and my feet slipped from under me and I cracked my skull …" *Id.*  An ambulance was called and arrived one hour later.

Plaintiff was transported to Wadley Regional Medical Center in Hope, Arkansas, where he was evaluated by the emergency room physician and x-rays were taken of his left hip, knee, and the lumbar of his spine. (ECF No. 13, p. 18).  Plaintiff was diagnosed with contusions (bruising) of his hip and back and released a few hours after being admitted.  *Id.* at p. 20.  The hospital

---

[1] Jailer Tommi's last name is not mentioned in the summary judgment record.

discharge papers advised Plaintiff to "follow up with Care Manger within 1 week", rest, ice the area to reduce swelling, and "take any prescribed pain medication. If none was prescribed, take acetaminophen, ibuprofen, or naproxen to control pain."[2] (ECF No. 13, pp. 12, 16-17).

Plaintiff acknowledges he saw the NCJ physician on two occasions in the months following his release from the hospital prior to being transferred to the ADC in March of 2019. However, Plaintiff states "…they wanted me to pay the bill, so I don't see my doctor…" and "they only giving me Tylenol". *Id.* at pp. 4, 7. Plaintiff does admit he was provided Ibuprohen or extra strength Tylenol every day for his pain while he was incarcerated in the NCJ. *Id.* In addition, he states he was provided "clean-up materials, - mop water – bleach – broom - mop" to clean up the leaking water and "…that what we been doing since I've been here…for some reason it don't leak a badly as it did in the warmer months…" *Id.* at p. 4. Plaintiff also states Defendants just told him "don't step-in-it". *Id.*

Plaintiff alleges his constitutional rights were violated when Defendants ignored the water leak in his cell, failed to move him to a different cell, "left me in ice cold water for 1 hour before EMS" arrived, and did not follow the hospital discharge instructions to follow up with his medical care provider the week after he was released from the hospital. (ECF No. 13, pp. 6-7). He also states the water coming from the shower leak was "stink nasty". *Id.* at p. 4.

In his Response to Defendants' summary judgment motion, Plaintiff states he complained of neck pain at the hospital, but x-rays were not taken of his neck. (ECF No. 36, p. 1). He goes on to state "Lt Karen…did not send me to have follow-ups on my condition…so they began giving me Tylenol 3's twice a day…ETC." *Id.* In addition, Plaintiff claims "when I got to ADC Grimes

---

[2] The hospital discharge instructions attached to Plaintiff's Amended Complaint (ECF No. 13, pp. 12-19) do not include any prescriptions for pain medication issued by the emergency room physician. However, the instructions include the following list of prescription medications Plaintiff was taking prior to his hospital visit: pravastatin, clonidine, meloxicam, amlodipine, carbamazepine, atenolol, and phenylephrine-pramoxine topical. *Id.* at p. 17.

3

Unit…I took 3 CT scans and 1 MRI to no avail…for 6 months, I was taking different types of drugs …for my pain and nervous condition…" *Id.* at p. 2. He explains he was then transferred to the ADC Ouachita River Correctional Unit "which is a diagnostics hospital…after 2 more CT scans and another MRI come to find out I have a cracked bone in my neck and 4 pinched nerves finally got to see a neuro surgeon today which is December 16th 2019…" *Id.*

### I. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. DISCUSSION

As an initial matter, Plaintiff can no longer seek injunctive relief (to have the water leak repaired) from the NCJ as he is no longer incarcerated at that facility. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief). *See also Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) (holding an inmate's claims regarding prison conditions moot once the inmate was transferred and no longer subject to those conditions). Therefore, Plaintiff's request for injunctive relief fails as a matter of law.

### A. Official Capacity Claims

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Nevada County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Nevada County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by

5

the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

Here, Plaintiff has not presented any summary judgment evidence of an unconstitutional policy or custom of Nevada County that contributed to the alleged violation of Plaintiff's civil rights. Accordingly, I recommend Defendants be granted summary judgment on all Plaintiff's official capacity claims.

### B. Conditions of Confinement

Plaintiff claims he was subjected to unconstitutional conditions of confinement at the NCJ in 2018 because there was "stink nasty" water leaking into his cell from the adjacent bathroom and he slipped and fell injuring himself. Plaintiff states he told Defendants about the leak, but they did nothing to correct the situation or move him to a different cell.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual

Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.*

Courts have consistently found wet or slippery floors do not constitute a substantial risk of serious harm in violation of the Eighth Amendment. *See e.g., Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) ("slippery floors constitute a daily risk faced by members of the public at large"); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors…do not state even an arguable claim for cruel and unusual punishment.") (internal quotations and citations omitted); *Baez v. Rosemack,* Civil No. 09-2121, 2011 WL 4062586, at *8 (D. Minn. Aug., 9, 2011) (standing water around an ice machine does not pose substantial risk of serious harm even if defendants were aware of the water); *Carter v. Arkansas Department of Correction,* Civil No. 5:08-cv-00222, 2008 WL 4102719, at *3 (E.D. Ark. Sept. 3, 2008) (a plaintiff who slipped and fell on water in his cell floor from a leaking skylight did not state a cognizable conditions of confinement claim under the Eighth Amendment).

7

Even if the court were to find the leaking shower posed a sufficiently serious condition to implicate the Eighth Amendment, Plaintiff fails to prove Defendants acted with deliberate indifference towards this condition. Plaintiff admits he was provided cleaning supplies to clean up the water after he informed Defendants of the issue. He also admits Defendants encouraged him not to step in the water. While the failure of Defendants to repair the leak may have been careless, they were at most negligent. Mere negligence does not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986). Accordingly, I recommend Defendants' summary judgment motion be granted on Plaintiff's conditions of confinement claim.

### C. Denial of Adequate Medical Care

Plaintiff also alleges Defendants denied him medical care after he slipped and fell in his cell on November 16, 2018, when they did not permit him to follow-up with his personal doctor and he was only seen twice by the NCJ's doctor. In addition, Plaintiff claims Defendants denied him adequate care by only giving him extra strength Tylenol for pain after his accident.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

8

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Because Plaintiff was evaluated by a physician as requiring treatment for the injuries he sustained when he fell at the NCJ, for purposes of this Report and Recommendation I will assume Plaintiff suffered from an objectively serious medical need.

In order for a prisoner to establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

When a delay in medical treatment is the alleged constitutional deprivation, the objective seriousness of the deprivation must also be measured by reference to the effect of delay in treatment. As a result, to succeed on a delay in medical treatment claim, the plaintiff "must place verifying medical evidence in the records to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quotation marks omitted) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). On summary judgment, a plaintiff must offer evidence a delay in treatment had a detrimental effect. In the absence of such

evidence, a plaintiff "fail[s] to raise a genuine issue of fact on an essential element of his claim." *Id.*

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir.1996). In *Dulany v. Carnahan,* 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S.Ct. at 292.

*Dulany,* 132 F.3d at 1239. *See also Tlamka v. Serrell,* 244 F.3d 628, 633 (8th Cir. 2001). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).

The summary judgment record reflects Plaintiff was taken to the hospital emergency room within an hour after he fell in his cell. At the hospital he was evaluated by the emergency room physician and x-rays were taken of his hip, knee and spine. He was diagnosed with contusions (bruising) of his hip and back. The emergency room physician did not prescribe any specific pain medication for Plaintiff when he was discharged.[3] Instead, the discharge instructions specifically

---

[3] Plaintiff claims in his Response the "Doctor at the emergency room prescibed me 650 Miligrams of Tylenol twice a day…". (ECF No. 36, p. 3). However, there is nothing in the summary judgment record to indicate a specific dosage of pain medication was "prescribed" by the emergency room physician.

10

stated if no specific pain medication was prescribed, "take acetaminophen, ibuprofen, or naproxen to control pain…" and "follow up with Care Manager within 1 week."  (ECF No. 13, pp. 12, 16-17).  Plaintiff admits Defendants provided him with Tylenol twice a day when he returned from the hospital.  Plaintiff also admits he was seen by the NCJ's physician twice after his accident prior to being transferred to the ADC Grimes Unit in March of 2019.

As discussed above, Plaintiff has no constitutional right to be evaluated by a physician of his choice.  Although the summary judgment record is not clear if Plaintiff was seen by NCJ's doctor within a week after he was discharged from the hospital, Plaintiff has not placed any verifying medical evidence in the record to establish a detrimental effect of any delay in seeing the jail's doctor.  The Court also notes Plaintiff claims in his Response after he was transferred to the ADC Grimes Unit he underwent "3 CT scans and 1 MRI to no avail…" and was not diagnosed with any issues with his neck until he was transferred to the Ouachita River Correctional Unit.  Plaintiff's statements in his Response are not substantiated by any medical records.  Even if they were, the statements only describe his diagnosis months after his transfer from the NCJ.  Plaintiff has offered no evidence establishing any delay in treatment at the NCJ had a detrimental effect on his condition and he has failed to raise a genuine issue of fact on an essential element of his claim.

Consequently, I recommend Plaintiff's claims for denial of medical care be dismissed and summary judgment be granted in favor of Defendants.[4]

### III.    CONCLUSION

For the reasons stated, I recommend Defendants' Motion for Summary Judgment (ECF No. 30) be **GRANTED** and all claims against them be dismissed with prejudice.

---

[4] Having determined Defendants did not violate Plaintiff's constitutional rights, the issue of qualified immunity will not be addressed in this Report and Recommendation.

11

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 18th day of February 2020.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE